UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Donald F. Walton,                                    Case No. 8:09-mp-00010-MGW
United States Trustee
for Region 21,

      Plaintiff,

vs.

Clark & Washington, P.C.,

      Defendant.
_____/

**MEMORANDUM OPINION ON DEFENDANT,**
**CLARK & WASHINGTON, P.C.'S, MOTION FOR SUMMARY JUDGMENT**

<u>Introduction</u>

Bankruptcy Code section 101(5) broadly defines "claim" to include virtually any right to payment. Under Bankruptcy Code section 362(a), the filing of a bankruptcy case automatically stays any act by a creditor to collect, assess, or recover a claim that arose before the petition date. And Bankruptcy Code section 524 enjoins the creditor from attempting to collect the prepetition claim if it was discharged under section 727.

The Defendant in this proceeding, a law firm specializing in Chapter 7 and 13 bankruptcies, accepts postdated checks as payment of its attorney's fees.[1] The Defendant routinely deposits the postdated checks after a client's bankruptcy case is filed. Under an earlier

---

[1]The facts as recited herein are as of April 26, 2010, the date of the hearing on Clark & Washington's motion for summary judgment (Doc. 32) and are as recited by the Court in its oral ruling from the bench on that date. (Doc. 39, p. 39, l. 3 – p. 56, l. 13). In light of the Court's oral ruling, the Court assumes that Clark & Washington ceased using postdated checks as part of its consumer bankruptcy fee agreement at that time.

practice, the Defendant notified its clients by telephone and mail if any of the postdated checks were returned for insufficient funds. Now, the Defendant sends the client one collection letter.

The postdated checks give rise to prepetition claims because they represent a right to payment that arose before the petition date. As a consequence, the act of depositing the postdated checks after a bankruptcy case has been filed violates the section 362 automatic stay. And continuing to deposit or collect on the postdated checks after a discharge has been entered violates the section 524 discharge injunction. Moreover, the Defendant's fee arrangement creates a conflict of interest between the Defendant and its clients. Accordingly, the Defendant shall no longer accept postdated checks for deposit after the petition date as payment of Defendant's fees for Chapter 7 cases filed in this Court.

Factual Background

A.      The Firm.

The Defendant, Clark & Washington, P.C., is a law firm based in Atlanta, Georgia. It has twelve offices in the Middle District of Florida. Seven of those offices are in the Tampa Division. Clark & Washington limits its practice to representing individual debtors in consumer cases filed under Chapters 7 and 13 of the Bankruptcy Code. Clark & Washington generally charges clients $1,250 for a Chapter 7 bankruptcy case. The client is also required to pay all costs (such as filing fees, credit counseling fees, and credit report charges) in advance.

Sometime in the late 1990's, Clark & Washington began accepting postdated checks as payment of their fees. Since that time, Clark & Washington has used a variety of fee agreements. But each of those agreements was predicated on the use of postdated checks to facilitate payment of the firm's fees. At this time, the Court is only concerned with Clark & Washington's current fee agreement.

2

B.      The Current Fee Agreement.

Clark & Washington currently requires each prospective client to execute a "Chapter 7 Attorney-Client Agreement."[2] Under the Agreement, the client is entitled to a free consultation.[3] That consultation primarily involves interviewing the client and gathering the information necessary to prepare the bankruptcy filing. Clark & Washington also provides other prepetition services under the Agreement, including helping the client obtain the required credit counseling certificate; advising the client about the bankruptcy process in general, the client's responsibilities as a debtor in particular, and any relevant legal issues; and preparing and filing the bankruptcy petition and schedules.[4]

There is a charge for those services, although the charge—a negotiated flat fee typically in the amount of $250—is relatively small in relation to the overall fee for prepetition and postpetition services.[5] The Agreement specifically provides that any prepetition fees not paid before the bankruptcy case is filed are subject to being discharged.[6] So Clark & Washington expressly waives its right to those fees under the Agreement.[7]

Clark & Washington also provides postpetition services, such as filing stay notices; preparing and filing any necessary papers; preparing for and attending hearings; and consulting with and advising the client.[8] The Agreement specifically requires that the client pay Clark &

---

[2] Doc. No. 33, Exhibit E.

[3] *Id.* at § I(a).

[4] *Id.* at § I(b).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at § II(a)-(c).

Washington a retainer to be applied as payment of those postpetition services.[9] The retainer—generally in the amount of $1,000—consists of postdated checks.[10]

Typically, the client provides Clark & Washington with four or five postdated checks in equal amounts to pay the retainer. The amount and date of each check is listed on a "Chapter 7 Fee Payment Schedule" attached to the Agreement as Appendix 1.[11] Clark & Washington deposits the checks on the date specified on the checks (as listed on the Chapter 7 Fee Schedule). The dates specified are always after the petition date, and in some instances, they are after the discharge has been entered.

The Agreement contains the following disclosure (in all capital letters) advising potential clients that they may wish to consult with independent counsel to determine whether they may pay for postpetition services with postdated checks:

> CLIENT IS ADVISED THAT THE USE OF POST-DATED CHECKS FOR POST-PETITION PAYMENT OF A <u>PRE-PETITION</u> CHAPTER 7 ATTORNEY FEE IS NOT ALLOWED IN THE MAJORITY OF JURISDICTIONS. TO ATTORNEY'S KNOWLEDGE, THE ACCEPTANCE OF POST-DATED CHECKS AS A RETAINER AGAINST SPECIFICALLY-SEGREGATED, <u>POST-PETITION</u> SERVICES HAS NOT BEEN DISALLOWED. NONETHELESS, CLIENT MIGHT WISH TO CONSULT INDEPENDENT COUNSEL IN THIS REGARD.[12]

C.    The Miscellaneous Proceeding.

The U.S. Trustee objects to Clark & Washington's fee arrangement. So the U.S. Trustee filed this miscellaneous proceeding seeking a declaration that Clark & Washington's fee

---

[9] *Id.* at § II(a).

[10] *Id.*

[11] *Id.* at Appx. 1.

[12] *Id.* at § II(a) (emphasis in original).

arrangement: (i) violates Bankruptcy Code section 362's automatic stay (Count I); (ii) violates Bankruptcy Code section 524's discharge injunction (Count II); and (iii) creates a conflict of interest between Clark & Washington and its clients (Count III).[13] Clark & Washington moved for entry of summary judgment in its favor on all three counts of the U.S. Trustee's Complaint.[14]

<u>Issues</u>

Clark & Washington's summary judgment motion raises three issues. First, do the postdated checks give rise to prepetition claims? Second, does Clark & Washington violate the automatic stay and discharge injunction by depositing the postdated checks after the petition date or sending collection letters if the postdated checks are returned for insufficient funds? Third, does Clark & Washington's fee arrangement (*i.e.*, the use of postdated checks) create a conflict of interest between Clark & Washington and its clients?

<u>Conclusions of Law</u>

The Court has jurisdiction over this adversary proceeding under section 28 U.S.C. § 1334(b) and 11 U.S.C. §§ 544, 548, and 550. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O).

A.       The Postdated Checks Give Rise to Prepetition Claims.

Bankruptcy Code section 101(5) defines a "claim" as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[15] A right to an equitable remedy also is a "claim" under section 101(5) so long as the breach giving rise to the

---

[13] Doc. No. 1.

[14] Doc. Nos. 32 & 33.

[15] 11 U.S.C. § 105(A).

equitable remedy also gives rise to a right to payment.[16] Congress intentionally defined "claim" as broadly as possible to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case."[17]

Consistent with this intent, the Supreme Court has unequivocally adopted a broad interpretation of section 101(5).[18] And it has declined all invitations to exclude any right to payment from the section 101(5) definition of "claim."[19] Given this extremely broad definition, very few economic relationships fall outside the definition of "claim" under section 101(5). In fact, the only economic relationships that do are those that do not involve a right to payment.

For instance, breach of a non-compete agreement would not be a "claim" under section 101(5) where there is no adequate remedy at law (*i.e.*, money damages).[20] Nor would the breach of an obligation giving rise to a right to an injunction prohibiting future pollution be a "claim" where there is no alternative right to payment.[21] Other examples of equitable remedies that do not give rise to a "claim" include a resulting trust, a partition in kind, or deed reformation.[22]

---

[16] 11 U.S.C. § 105(B).

[17] H.R. Rep. No. 95-595, at 309 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6266; S. Rep. No. 95-989, at 21-22 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5807-08.

[18] *See, e.g., F.C.C. v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293, 302-03, 123 S. Ct. 832, 839, 154 L. Ed. 2d 863 (2003) (reaffirming "the broadest available definition" of a claim); *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S. Ct. 1212, 1216, 140 L. Ed. 2d 341 (1998); *see also* 2 *Collier on Bankruptcy* ¶101.05[1] (16th ed. 2010).

[19] 2 *Collier on Bankruptcy* ¶101.05[1] (16th ed. 2010) (citing *NextWave Pers. Commc'ns, Inc.*, 537 U.S. at 302-03, 123 S. Ct. at 839; *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 2153-54, 115 L. Ed. 2d 66 (1991)).

[20] *See, e.g., Oseen v. Walker (In re Oseen)*, 133 B.R. 527, 530-31 (Bankr. D. Idaho 1991); *In re Cox*, 53 B.R. 829, 832-33 (Bankr. M.D. Fla. 1985).

[21] *U.S. v. Apex Oil Co., Inc.*, 579 F.3d 734, 735-37 (7th Cir. 2009); *Torwico Elec., Inc. v. New Jersey Dep't of Envtl. Prot. (In re Torwico Elec., Inc.)*, 8 F.3d 146, 150-51 (3d Cir. 1993).

[22] *Sheerin v. Davis (In re Davis)*, 3 F.3d 113, 116-17 (5th Cir. 1993).

None of the breaches that give rise to those remedies give rise to an alternative right to payment under state law.[23]

But postdated checks do give rise to a right to payment. Under article 3 of the Uniform Commercial Code,[24] a check is an order to an account holder's bank to pay the amount of the check to the order of an identified person—in this case, Clark & Washington.[25] Ordinarily, a check is payable on demand.[26] But a check may be postdated, in which case the time of payment is determined by the date stated on the check.[27] If the postdated check is dishonored by the account holder's bank, the account holder who signs the check is obligated to pay the amount of the check.[28] A postdated check is, in effect, the functional equivalent of a promissory note.

A postdated check—like a promissory note—really is nothing more than a promise to pay a certain sum of money at a specified time. For that reason, a postdated check is a "claim" under Bankruptcy Code section 101(5). What is more, the postdated check is a prepetition claim. Under the Bankruptcy Code, "contract-based claims arise at the time the contract is entered into."[29] And the Agreement here is entered into before the petition date. Accordingly, the postdated checks give rise to prepetition claims.

---

[23] *Id.*

[24] Ch. 673, Fla. Stat. (2010).

[25] §§ 673.1041(6), .1091(2), Fla. Stat. (2010).

[26] § 673.1041(6), Fla. Stat.

[27] § 673.1131(1), Fla. Stat.

[28] §§ 673.1031(1)(c), .4141(2), Fla. Stat.

[29] *In re Griffin*, 313 B.R. 757, 762-63 (Bankr. N.D. Ill. 2004); *see also Manville Forest Prods. Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128-29 (2d Cir. 2000); *In re Caldor, Inc.*, 240 B.R. 180, 192 (Bankr. S.D.N.Y. 1999).

The fact that Clark & Washington specifies in its Agreement that the postdated checks are payment for postpetition services does not alter that outcome. For starters, a prepetition claim is not converted into a postpetition claim simply because the time for payment is triggered by a postpetition event.[30] "A debt can be absolutely owing prepetition even though that debt would never have come into existence except for postpetition events."[31] So the postdated checks are prepetition claims even though Clark & Washington may provide its services postpetition.

Moreover, allocating the postdated checks to payment of postpetition services does not somehow convert the postdated checks into executory contracts. Under the most common definition, an executory contract is a "contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."[32] While the Eleventh Circuit has not specifically rejected this definition, it has adopted the "functional approach" to define executory contracts.[33] Under the functional approach, a court looks to the benefits a debtor and its estate would gain if a contract is assumed or rejected.[34] The Court concludes that under either definition a postdated check cannot be considered an executory contract.[35]

---

[30] *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt.)*, 4 F.3d 1329, 1335 n.7 (5th Cir. 1993); *United States v. Gerth*, 991 F.2d 1428, 1433-34 (8th Cir. 1993); *In re APF Co.*, 270 B.R. 567, 571 (Bankr. D. Del. 2001); *In re Griffin*, 313 B.R. at 762; *In re Caldor, Inc.*, 240 B.R. at 192.

[31] *In re Griffin*, 313 B.R. at 763 n.4 (citing *Sherman v. First City Bank of Dallas (In re United Scis. of Am., Inc.)*, 893 F.2d 720, 724 (5th Cir. 1990)).

[32] Vern Countryman, *Executory Contracts in Bankruptcy (Part I)*, 57 Minn. L. Rev. 439, 460 (1973).

[33] *Sipes v. Atlantic Gulf Cmtys. Corp. (In re Gen. Dev. Corp.)*, 84 F.3d 1364, 1374 (11th Cir.1996)

[34] *Id.*

[35] *See, e.g.*, *Kaler v. Craig (In re Craig)*, 144 F.3d 593, 595-596 (8th Cir. 1998).

But even if a postdated check is an executory contract, and the Court is not persuaded that it is, the outcome of this case remains the same. Under Bankruptcy Code section 365, the trustee may assume an executory contract.[36] If the trustee rejects an executory contract, then the other party to the contract has an unsecured prepetition claim for damages.[37] The trustee in this case (or in any case involving a similar fee arrangement) would never assume Clark & Washington's fee arrangement. So in the end, the postdated checks would still give rise to prepetition claims even if they were executory contracts.

In any event, this Court concludes that the postdated checks are not executory contracts. Instead, they fall squarely within the section 101(5) definition of a "claim." And the majority of courts that have considered this issue agree.[38] For instance, the court in *In re Waldo* recently reached the same result in a case involving the same parties and similar facts.[39] While the Court is not bound by the court's decision in *In re Waldo* (the court's decision in that case does not have preclusive effect), it does find Judge Stair's thorough, well-reasoned opinion in that case instructive.

In that case, the U.S. Trustee objected to the fee arrangement that Clark & Washington used in the Eastern District of Tennessee. The fee agreements in that case were similar to those used in this proceeding, except that the debtors paid a single flat fee—generally $1,000 or $1,250—for both prepetition and postpetition services.[40] Like in this case, the debtors in that

---

[36] 11 U.S.C. § 365(a).

[37] 11 U.S.C. § 502(g).

[38] *See, e.g., Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1126-29 (7th Cir. 2003); *In re Waldo*, 417 B.R. 854, 885 (Bankr. E.D. Tenn. 2009); *In re Mansfield*, 394 B.R. 783, 787-91 (Bankr. E.D. Pa. 2008); *In re Griffin*, 313 B.R. 757, 762 (Bankr. N.D. Ill. 2004); *In re Chandlier*, 292 B.R. 583, 587 (Bankr. W.D. Mich. 2003).

[39] *In re Waldo*, 417 B.R. at 885.

[40] *Id.* at 861-79.

case paid the flat fee with postdated checks, which Clark & Washington deposited postpetition. The U.S. Trustee objected to Clark & Washington's fee arrangement and moved to, among other things, require Clark & Washington to disgorge the attorneys' fees it received in seven bankruptcy cases.

The court in *In re Waldo*, following the majority view, held that prepetition agreements to pay a flat fee for both prepetition and postpetition services using postdated checks (deposited postpetition) are dischargeable debts.[41] According to the court, the postdated checks were prepetition debts, and all prepetition debts (including prepetition attorney's fees) are dischargeable in bankruptcy so long as the prepetition debt is not specifically excluded from discharge under section 523. Because section 523 does not specifically exclude prepetition attorney's fees, they are dischargeable in bankruptcy.[42] In reaching that holding, the *Waldo* court specifically rejected the minority view adopted in *In re Hines.*[43]

In particular, the *Waldo* court rejected the notion that a flat fee to pay for postpetition services creates a postpetition claim.[44] The court explained that the fact that a "creditor may hold a contingent right to payment until filing the petition does not mean counsel holds a post-petition claim."[45] Recognizing, instead, that a claim arises prepetition if the "creditor could fairly contemplate the possibility of a claim against the debtor's bankruptcy estate" as of the petition date, the court specifically found that the right to attorney's fees under Clark & Washington's fee agreement was a prepetition claim:

---

[41] *Id.* at 885.

[42] *Id.* at 880; *see also* 11 U.S.C. § 523.

[43] *In re Waldo*, 417 B.R. at 881-82 (discussing *Gordon v. Hines (In re Hines)*, 147 F.3d 1185 (9th Cir. 1998)).

[44] *Id.* 882-84.

[45] *Id.* at 882 (quoting *In re Symes*, 174 B.R. 114, 118 (Bankr. D. Ariz. 1994)).

> The court finds that the attorneys' fees in each case are flat fees
> which arose pre-petition, irrespective of when services were to be
> rendered. Upon the signing of each Engagement Contract, Clark &
> Washington and Mr. Crawford became obligated to each of the
> Debtors to represent them in their Chapter 7 bankruptcy cases in
> exchange for payment of the agreed upon flat fee, and the fact that
> some services were to be provided post-petition does not change
> the nature of the fee, nor does it change the nature of the
> obligation.[46]

Even though Clark & Washington specifically segregated its flat fee between prepetition

and postpetition services in this proceeding, the Court concludes that the reasoning in *Waldo*

applies with equal force in this case. Upon execution of the Agreement, Clark & Washington

was obligated to represent its clients in their Chapter 7 cases. Accordingly, allocating the

postdated checks to payment of its postpetition services does not alter the true nature of the

postdated checks: they are prepetition claims dischargeable in bankruptcy.

B.      Clark & Washington's Fee Arrangement Violates the Automatic Stay and
        Discharge Injunction.

The filing of a petition under the Bankruptcy Code operates as an automatic stay of "any

act to collect, assess, or recover a claim against the debtor that arose before the commencement

of the case under this title."[47] The section 362 automatic stay is designed to give debtors "a

breathing spell from [their] creditors. It stops all collection efforts, all harassment, and all

foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or

simply to be relieved of the financial pressure that drove [the debtor] into bankruptcy."[48] The

automatic stay is integral to the operation of the Bankruptcy Code—it is one of the "fundamental

---

[46] *Id.* at 883.

[47] 11 U.S.C. § 362(a)(6).

[48] *Ellison v. Nw. Eng'g Co.*, 707 F.2d 1310, 1311 (11th Cir. 1983) (quoting H. R. Rep. No. 95-595, at 340 (1977) *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6297).

debtor protections" under title 11.[49] The Eleventh Circuit has characterized the automatic stay as "essentially a court-ordered injunction, [and] any person or entity who violates the stay may be found in contempt of court."[50] The automatic stay continues to operate until the time the case is closed, dismissed, or until the time a discharge is granted or denied.[51]

Under its current fee arrangement, Clark & Washington deposits the postdated checks after the petition date. Clark & Washington previously called its clients and sent them various collection letters if the postdated checks were returned for insufficient funds. Now, Clark & Washington sends one collection letter. In any case, each of those acts—depositing the postdated checks, making collection calls, and sending collection letters—is a postpetition attempt to collect a prepetition claim. So each of those acts violates the automatic stay.

Once the discharge has been entered, continued attempts to collect on the postdated checks—whether depositing the postdated checks, making collection calls, or sending collection letters—violates the discharge injunction under section 524.[52] The discharge injunction, like the automatic stay, prohibits "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."[53] In effect, the discharge injunction "simply makes permanent what had previously been temporary" under section 362.[54]

---

[49] *Fla. Dep't of Rev. v. Omine (In re Omine)*, 485 F.3d 1305, 1314 (11th Cir. 2007).

[50] *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1546 (11th Cir. 1996) (quoting *Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir. 1992)).

[51] 11 U.S.C. § 362(c)(2).

[52] 11 U.S.C. § 524(a)(2); *In re Waldo*, 417 B.R. 854, 888-89 (Bankr. E.D. Tenn. 2009).

[53] 11 U.S.C. § 524(a)(2).

[54] *In re Perviz*, 302 B.R. 357, 369 (Bankr. N.D. Ohio 2003).

The purpose of the discharge injunction is "intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it."[55] Yet, that is precisely what Clark & Washington's fee arrangement does. The very nature of a postdated check itself, creates a pressure to honor it. The Court recognizes that Florida's "bad check" laws are generally known within the community and discourage individuals from not honoring postdated checks. Sending a collection letter—even if only one—likewise creates pressure to pay a discharged debt. Accordingly, continued attempts to collect on the postdated checks violate the section 524 discharge injunction.

C.   The Agreement Creates a Conflict of Interest Between Clark & Washington and its Clients.

Clark & Washington's fee arrangement also creates an impermissible conflict of interest between the firm and its clients. The Rules Regulating the Florida Bar specifically prohibit a lawyer from entering into a business transaction with a client or knowingly acquiring a security interest adverse to the client unless (i) the terms of the transaction are fair and reasonable to the client and fully disclosed in writing in a manner that can reasonably be understood by the client; (ii) the client is advised in writing of the desirability of seeking advice from independent legal counsel and given an opportunity to do so; and (iii) the client gives informed consent to the transaction in writing.[56]

The Agreement constitutes a business transaction between Clark & Washington and its clients. In fact, Clark & Washington argued in support of its summary judgment motion that the postdated checks are security for the payment of postpetition fees. Clark & Washington does disclose in the Agreement that prospective clients may need to consult independent counsel

---

[55] H.R. Rep. No. 95-595, at 365-66 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6322; S. Rep. No. 95-989, at 80 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5866.

[56] R. Regulating Fla. Bar. 4-1.8.

regarding the firm's fee arrangement. But that disclosure is not sufficient to cure the conflict of interest.

To begin with, the disclosure is, at best, ambiguous; at worst, it may not accurately set forth what the law is. The second to last sentence of the disclosure—"To Attorney's knowledge, the acceptance of post-dated checks as a retainer against specifically-segregated, post-petition services has not been disallowed"—is particularly confusing. So it is not clear that the disclosure is made in a manner that can reasonably be understood by the client. Besides, the disclosure highlights the problem with the firm's fee arrangement: the client is walking into bankruptcy with an adverse relationship with counsel that requires another lawyer's assistance to understand. For those reasons, the Court concludes Clark & Washington's current fee arrangement creates a conflict of interest.

Conclusion

Based on the foregoing, the Court concludes that the postdated checks give rise to a prepetition claim because they represent a right to payment. As a consequence, the act of depositing the postdated checks after a bankruptcy case has been filed violates the automatic stay. And continuing to deposit or collect on the postdated checks after a discharge has been entered violates the section 524 discharge injunction. Moreover, the acceptance and deposit of postdated checks creates a conflict between the Defendant and its clients. Accordingly, the Defendant shall no longer accept postdated checks for deposit after the petition date as payment of Defendant's fees for Chapter 7 cases filed in this Court.

The Court will enter a separate final judgment in favor of the Plaintiff.

**DATED** in Chambers at Tampa, Florida, on _____July 12, 2011_____.

_____
Michael G. Williamson
United States Bankruptcy Judge


**Denise E. Barnett, Esq.**
Attorney for United States Trustee


**Richard Thomson, Esq.**
**Glenn E. Gallagher, Esq.**
Attorneys for Clark & Washington, P.C.